UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JANE DOE,

    Plaintiff,

v.

VINCENNES UNIVERSITY;
VALDEMAR CASTELLANO,

    Defendants.

CASE NO. 2015-CV-241

## COMPLAINT AND DEMAND FOR JURY TRIAL

### (INJUNCTIVE RELIEF SOUGHT)

Plaintiff, Jane Doe[1] ("Plaintiff" or "Jane"), sues Defendants, Vincennes University ("Defendant" or "VU") and Valdemar Castellano ("Defendant" or "Castellano") and pursuant to Rule 8, Federal Rules of Civil Procedure alleges:

### Introduction

1. This is an action involving claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 [hereinafter "Title IX"] and intentional torts under Indiana state law arising out of forcible rape.

### Parties, Jurisdiction, & Venue

---

[1] Consistent with other federal courts' treatment of party names in highly sensitive cases that arise under Title IX of the Education Amendments of 1972 and involve sexual assault, see, e.g., Doe v. Erskine College, Case No. 8:04-23001, 2006 WL 1473853 (D.S.C. May 25, 2006), and to protect the privacy, safety, and dignity of Plaintiff and her family, Plaintiff is proceeding anonymously in this pleading. To the extent necessary, Plaintiff will seek appropriate relief from the Court to continue to proceed in this fashion and to otherwise protect her anonymity throughout the instant litigation.

2.  Plaintiff is a citizen of the State of Indiana who resides in Scott County, Indiana.

3.  Defendant, VU, is incorporated in Indiana as Vincennes University and is an instrumentality of the State of Indiana that is charged by law with the administration of Vincennes University, an educational institution and public university of the State of Indiana.  Vincennes's campus is located in the Southern District of Indiana.

4.  Defendant, VU, receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

5.  This Court has subject matter jurisdiction over the Title IX claims against Defendant VU pursuant to 28 U.S.C. §§ 1331 and 1343.

6.  Plaintiff invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as they arise out of a common nucleus of operative facts.

7.  Plaintiff invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 as Defendant Castellano is domiciled in a state other than Indiana and VU is dominiciled in Indiana. The amount in controversy is in excess of $150,000, exclusive of interest and costs.

8.  Defendant, Castellano, is a citizen of the State of Ohio, who, upon information and belief, resides in Allen County, Ohio.

9.  This Court has subject matter jurisdiction over the Indiana state law intentional tort claims against defendant Castellano pursuant to 28 U.S.C. § 1332.

10. Venue is proper in the Terre Haute Division of the U.S. District Court in the Southern District of Indiana pursuant to 28 U.S.C. § 1391 because, *inter alia*, VU is located within the Terre Haute Division and is subject to this Court's personal

jurisdiction.  Defendant Castellano is also subject to the court's personal

jurisdiction in Terra Haute. In addition, a substantial part of the events giving rise

to the claim occurred in this Division.

11. Plaintiff has retained Langacker Law, Ltd. and has agreed to pay their reasonable

attorney's fees in order to represent her in this action.

12. All conditions precedent to the maintenance of this suit and Plaintiff's claims

have occurred, been performed or otherwise waived.

## General Allegations

### SUMMARY

13. From September 2012 until September 2013, Valdemar Castellano ("Castellano")

was a full-time undergraduate student attending VU.

14. From September 2012 to September 2013, Castellano had six harassment claims

filed against him with the VU police.  These claims included brandishing a knife,

unwelcome sexual conduct with a female peer, and repeated harassment.  No

disciplinary action was taken against him by VU, nor criminal charges filed,

regarding any of these reports.

15. On August 23, 2013, Jane met Castellano on the VU campus, and despite her

rejection of his romantic overtures, he forcefully pursued a romantic relationship.

16. From August 24 through September 5, 2013, Castellano forced Jane to spend each

night at his apartment.  He repeatedly threatened her with his knife and stated that

he would cause her great harm if she left.  During this traumatic period, Jane was

forcibly raped six times and Castellano repeatedly hit her with both an open palm and closed fist.

17. In early September 2013, Castellano invited himself to Jane's hometown.  During this traumatic trip he raped Jane in her childhood bedroom.  When they returned to VU, Castellano raped Jane one final time before she finally had the strength to permanently escape.  On September 5, 2013, Jane filed a report with the VU Police Department.

18. VU does not have a designated Sexual Assault Response Team.  VU relies on the general VU Counseling services, Hope's Voice volunteers, and additional community members who serve on the Sexual Assault Response Team to support assault victims on campus in addition to their professional duties.

19. The VU Police Department referred Jane to Hope's Voice, a volunteer organization dedicated to assisting sexual assault victims.  Hope's Voice helped Jane obtain an order of protection against Castellano and accompanied her to an interview with the Knox County Prosecutor.  Hope's Voice made no further attempts to contact Jane.

20. John Livers, VU Dean of Students met with Mr. and Mrs. Doe in September 2013 and indicated that he knew Castellano and was aware of the complaints lodged against Castellano.  Livers stated that the incident was being investigated and Castellano was currently suspended, but offered no additional assistance for Jane.

21. Jane felt unsafe on campus, but her requests for an escort were denied.  She was not given priority at the VU counseling center, and was also denied additional academic assistance through the STEP program.

22. After being ignored for several weeks, Mrs. Doe went to VU and insisted on meeting with Livers again.  At this meeting he informed her that Castellano was being expelled.  When Mrs. Doe informed him of Jane's continued struggles, instead of offering to help, Livers stated that he could immediately withdraw her.

23. Jane was finally able to see a VU Counselor with the assistance of a professor she voluntarily confided in.  However, the counselor did not make Jane feel comfortable, and Jane's requests for a new counselor were denied.

24. VU took no affirmative action to assist Jane and the off-campus Sexual Assault Response Team also failed to provide adequate assistance.  Jane's grades went from As and Bs in high school to Cs and Ds during her first semester of college.  When she returned to VU in the spring, Jane continued to struggle, resulting in her withdrawal from VU in March 2014.

## Prior Complaints Against Castellano

25. On September 17, 2012, VU student Alyssa Miller filed a harassment complaint with the VU Police Department.  Ms. Miller's complaint alleged that Castellano always waited outside her classes and followed her around campus.  Ms. Miller also alleged that Castellano took photos of her at the VU Rec Center.

26. Ms. Miller requested that Castelleno be prevented from having contact with her.  VU Police spoke with Castellano the next day and orally requested that he have no further contact with Ms. Miller.  No further action was taken.

27. On September 19, 2012, Castellano was involved in another harassment incident, when he called the VU Police Department and reported that two female students were harassing him.

28. When VU Police arrived on the scene, the two female students, Taylor Roney and Katelyn Terrell, stated that Castellano would not leave them alone.  Ms. Roney and Ms. Terrell stated that Castellano called them repeatedly.

29. Castellano orally agreed not to contact Ms. Roney and Ms. Terrell.  No further action was taken.

30. On September 23, 2012, Tony Manuel filed a complaint against Castellano with the VU Police Department.  Mr. Manuel alleged that Castellano was harassing him by texting and calling his phone several times, in addition to sending constant Facebook messages.  Mr. Manuel stated that he just wanted Castellano to leave him alone.

31. On September 23, 2012, VU police spoke to Castellano and asked him to leave Mr. Manuel alone.  Castellano agreed to have no more contact with Mr. Manuel. No further action was taken.

32. On October 17, 2012, Hollie Maddox and Sierra Scarbrough contacted VU police and stated that Castellano was following them.  Ms. Maddox and Ms. Scarbrough stated that Castellano was interested in both women and would take turns calling them.  Ms. Maddox and Ms. Scarbrough then stated that Castellano was following them and requested a ride back to their dorm.  VU police provided an escort.

33. There is no indication that VU police followed up with Castellano regarding this incident, or discussed the matter directly with him.  No further action was taken.

34. On November 26, 2012, Jeremy Carlton filed a report with the VU Police Department regarding Castellano's actions at the VU Bowling Alley.  Mr. Carlton described Castellano's actions as, "creeping out patrons."  The VU Bowling Alley's policy at the time was to request that Castellano leave the premises when these behaviors arose.  According to Mr. Carlton, one such incident required calling the VU Police Department in order to get Castellano to leave the bowling alley.

35. Mr. Carlton also described personal issues with Castellano.  Castellano called and texted Mr. Carlton's now ex-girlfriend during the time that they were still dating.

36. VU police spoke with Castellano over the phone about this incident.  At that time, Castellano made allegations about Mr. Carlton and his ex-girlfriend.  According to the report, Castellano advised officers that he intended to meet with Dean of Students, John Livers, on November 27, 2012, about this incident.  It is unknown whether he indeed did so. There is no record of any action taken as a result of this incident.

37. On February 1, 2013, Lindsay Kitchen filed a complaint about Castellano with the VU Police Department.

38. Ms. Kitchen stated that she met Castellano in the computer lab on January 31, 2013, and he invited her to his room to play Modern Warfare.  Kitchen agreed.

39. After fifteen minutes of playing video games, Castellano told Kitchen that he wanted to watch a movie instead.  Castellano then lay down on the bed, pulled a blanket over himself, and said that he wanted to cuddle.

40. Ms. Kitchen declined the request.  She stated that it appeared Castellano was fondling himself beneath the blanket.  Ms. Kitchen told Castellano that she was uncomfortable and wished to be checked out of the dorm.  She repeated herself five times before Castellano complied.  Castellano hugged Ms. Kitchen from behind as she was checking out.

41. Ms. Kitchen reported seeing Castellano again on February 1, 2013 in the computer lab.  He inquired as to why she was ignoring him.  Ms. Kitchen replied that she was back together with her ex-boyfriend.

42. In response, Castellano grabbed a pencil and wrote down his phone number.  He handed her the paper and stated: "Call me or I'll hunt you down."  As Castellano was leaving, he lifted up his shirt, displaying 3-4 knives, and said, "You like my knives?"

43. VU Police stated that they would speak with Castellano and tell him to stop talking to Ms. Kitchen.

44. On February 1, 2013 VU police spoke with Castellano and took possession of his knives.  He was told to no longer make contact with Ms. Kitchen.  No further action was taken.

**Castellano Preys on Jane**

45. Jane Doe enrolled at Vincennes University in the fall of 2013 as a full-time freshman undergraduate student.

46. On August 23, 2013, Jane and Monica, Jane's roommate, were at the VU Student Union, when Castellano approached Jane for the first time.  He sat down next to

Jane and gave her his phone number.  Jane texted him so he would have her number and suggested that he attend the VU dance, a university sponsored event, later that evening.  VJ responded that the only way he would go is if Jane agreed to date him.

47. Castellano joined Jane and her group of friends at the dance.  Jane and Castellano spoke for 15 minutes before she reluctantly agreed to dance with him. While dancing, Castellano persistently ground his pelvis against Jane, making her uncomfortable.  Jane asked Castellano to stop and he became upset and left with a friend.

48. When Castellano re-emerged he returned to Jane's side.  Castellano repeatedly kissed Jane despite clear statements that she did not want to be kissed.  When she pushed him away, Castellano took Jane aside and said, "I don't know what your problem is, but you're going to date me."

**The Terra Haute Trip**

49. On August 24, 2013, Castellano called Jane requesting she give him a ride to Terra Haute. When they started to argue on the drive, Castellano threatened her with a knife. When she began to protest, he said to her, "You are going to get it when we get back." During the argument, Jane called her mother and explained that Castellano was yelling and cursing at her.  Castellano forcibly took the phone away and told Jane's mother that they were OK and everything was fine.

50. Jane and Castellano stayed at the Terra Haute mall from noon until 6pm.  When they returned, Castellano drove Jane to her dorm and she signed him in.  Once in her dorm room Castellano wanted to cuddle.  Jane said she did not want to cuddle

and immediately took him downstairs and signed him out.  Later that night, Castellano called and repeatedly sent Jane rude and sexual text messages.

## The First Rape and Criminal Confinement

51. On August 25, 2013, Castellano insisted on showing Jane around campus.  She agreed to go with him based on his threats while they were in Terra Haute.  Castellano took Jane to the student union around 9:30 pm.  While at the student union, Castellano pulled out his knife and told Jane he was not afraid to use it on her.  The pair then left the union and returned to Castellano's apartment.

52. Once in the apartment, Castellano forced Jane into his room.  Despite her pleas that she did not want to have sex, Castellano removed her clothes, pinned Jane down on his bed, and used his knees to spread her legs apart.  Castellano raped Jane and broke her hymen.  Throughout the rape, Jane told Castellano to stop.  When she fought back, Castellano pinned her down by her wrists.

53. After raping Jane, Castellano went to the bathroom and cleaned himself up.  When he returned, Castellano apologized and said, "I'm sorry if it hurt you."  However, when Jane tried to get out of bed and leave, Castellano pulled her back into bed and locked the door.  He told Jane that she was going to stay with him.  Jane told Castellano she wanted to leave and that she needed to get back to the dorm.  Instead, he made her sleep the rest of the night between him and the wall.

## The Violence Escalates

54. On August 26, 2013, Castellano drove Jane back to her dorm at 9:00 a.m.  When she returned to her room, Monica asked where she had been.  Jane was afraid to tell Monica what had happened, so she said that she stayed with a friend.

55. Castellano met Jane outside one of her final classes and told her she was coming with him to his apartment.  Jane went with Castellano because she was terrified.

56. While at the apartment, Castellano turned on the TV and laid on the couch. Jane sat at the other end of the couch, but he moved closer, removed his penis from his pants, and began to masturbate.  Jane tried to get up but Castellano grabbed her wrist and told her she would perform fellatio on him. Jane told him no.

57. Castellano forced Jane's head down, placed his hands behind her head, and forced her to perform oral sex on him. Jane tried to fight back; however, Castellano hit Jane in the mouth and dragged her by the hair into his bedroom.

58. Once in the bedroom, Castellano pinned Jane down while he vaginally raped her. When Jane tried to get away, Castellano dug his fingernails into her back and held her in place.  When he was finished and she reached for her shirt, Castellano hit Jane's head on the bedpost.

59. Castellano then drove Jane back to her dorm to get her clothing.  During the car ride Castellano told Jane, "You just can't wait to get back" and then smacked her in the mouth.  Jane went up to her room, grabbed her laundry and came back to Castellano's car.  They returned to his apartment and did laundry.  Castellano would not let her leave the apartment by herself.

**Confinement and Repeated Rape**

60. On August 27, 2013, Jane went to all of her classes but was forced to return to Castellano's apartment. Upon returning to his apartment, Castellano forced Jane to undress him and perform non-consensual oral sex for five minutes, causing her to gag.

61. After the oral sex, Castellano commanded that Jane would have sex with him. She said no.  Castellano then grabbed her by the wrists and pulled her on top of him.

62. Castellano brandished his knife and ordered Jane to go to his bedroom.  He followed closely behind her with the knife.  Jane was forced down on the bed and covered herself with the comforter, pulling her knees to her chest to prevent further sexual activity.  Castellano set the knife down on the glass table.

63. Jane and Castellano fought for ten minutes. She kicked and hit him, trying to avoid another rape.  Jane told him to stop but feared yelling, remembering the knife on the table.  Castellano then raped her for the third time.

64. There was no further rape that evening; however, Castellano forced Jane to remain in his apartment.  He locked the bedroom door and once again made her sleep between himself and the wall.

65. On the morning of August 28, 2013, Castellano anally raped Jane for over ten minues in the shower. Castellano then ordered Jane to clean up the mess before coming out of the bathroom.

66. Jane refused to clean the bathroom.  Castellano went to his bedroom, returned with his knife, and pressed it against Jane's throat, threatening to harm her if she did not clean.

67. After she cleaned the bathroom, Castellano drove Jane to her dorm.  Before she got out of the car, Castellano apologized to Jane and said the violence would never happen again.  Castellano then said he would see her after her last class.

68. Jane went to all her classes.  She did not tell anyone about what happened because she still feared Castellano harming her.  Jane did not see Castellano again until later that evening.  When Jane said she wanted to hang out with her roommate, Castellano told her she could not.

69. When they returned to the apartment, Castallano slammed the door and locked it. He threw Jane on the couch and forcibly took off all her clothing and removed his own.  Jane kicked him in the abdomen.  Castellano slapped Jane across the face. Jane stopped fighting after that, afraid he would hurt her more.

70. Castellano grabbed Jane's knees, forced her legs apart, and raped her.  She raised her voice and said no. Over her pleas to stop,  Castellano raped Jane for one hour.

71. That night Castellano slept in his room and Jane slept on the couch in the living room.  She did not attempt to leave out of fear that he would hurt her.

72. On the morning of August 29, 2013, Castellano woke Jane up by stomping around the apartment.  Angry that she did not sleep with him the night before, Castellano pulled Jane in to the second bedroom and slammed the door shut.   He slammed Jane's head against the door and demanded that she get undressed, stating that he would "Make her life hell today."

73. Castellano pinned Jane's arms against the door and above her head and began kissing and biting up and down her body.  Then Castellano pulled her down to the

floor and on to her back, forced her legs apart with his knees and performed non-consensual oral sex on her.

74. Once Castellano finished performing oral sex, he pulled Jane up, pushed her on to the bed, and raped her.  Jane told him to stop and then scratched him across his back, drawing blood.  Castellano got angry and bit her nipple so hard it left marks, then got off of her and hit Jane in the face with a closed fist.

75. After three days of captivity, battery, and rape, Castellano kicked Jane out on August 29, 2013.  She left and returned to her dorm, but her clothes remained in Castellano's apartment. Castellano immediately started calling and texting vulgar messages to Jane.  Jane did not reply and stayed in her dorm room that evening.

76. Jane saw Castellano again on August 30, 2013.  During this encounter he pushed Jane against the wall and said he would cut her throat with a knife if she told anyone what had happened to her.

**A Violent Trip Home**

77. Castellano then asked what Jane was doing for Labor Day.  Jane said that she was going home and Castellano insisted he go with her.  Jane said she would rather he did not, but out of fear, called her parents and asked if Castellano could come home with her for the weekend.  Her parents reluctantly approved.

78. Castellano argued with Jane and her parents throughout the day on August 31, 2013.  When Castellano and Jane returned home from a movie, Mrs. Doe was in her bedroom and Mr. Doe was watching TV.  Jane was going to sleep with her mother, Castellano in Jane's room, and Jane's dad on the couch, in order to keep an eye on Castellano.

79. Jane showered and put on her pajamas, then went to her room to speak with Castellano, who stated that he wanted to have sex.  When she said no, he continued to initiate intercourse.  When Jane tried to yell, Castellano put his hand over her mouth and Jane bit his hand.  Castellano pulled her onto the bed, removed her pajama shorts, and raped her.

80. Throughout the rape, Castellano kept Jane quiet by holding his knife against her stomach.  To demonstrate he was serious, Castellano cut Jane's arm.  After being violently raped, Jane went to sleep in her parents' room.  She told her mom that the dog scratched her arm, fearful of what would happen if she reported the rape.

81. Upon returning to campus on September 4, 2013. Jane's things were brought back to her dorm.  After getting settled, she went to Castellano's apartment and they went to Clay Mitchell's ("Clay") apartment, to help Clay with his homework. Jane and Castellano left Clay's apartment, and once in the hallway, Castellano forcefully grabbed Jane's arm and dragged her up to his apartment.

82. Castellano pulled Jane in to his apartment and once again initiated intercourse. He took off all his clothes, except his shirt, then brandished his knife and forced Jane to undress.  Castellano once again used his knees to force Jane's legs apart. Jane pushed against his chest and tried to fight him off, but he overpowered and raped her.

83. After he finished, Castellano told Jane to get dressed.  Castellano then took Jane back to her dorm and dropped her off.  Jane stayed in her dorm that night.

84. On September 4, 2013, Jane stayed with Castellano after class.  He took her to Wal-Mart, where they purchased a pregnancy test.  Castellano forced Jane to

sleep at his apartment that night, where she once again was kept between
Castellano and the wall.

85. On September 5, 2013 Jane returned to her dorm told her roommate everything
that had happened between her and Castellano.  She finally gained enough
strength to confess what Castellano was putting her through.

**VU's Response to Jane's Complaint**

86. Jane filed a report with the VU Police Department on September 5, 2013. She was
immediately taken to Good Samaritan Hospital and a rape kit was performed.
After the hospital visit, Jane and the detective returned to the VU Police
Department.  During the interview, Jane was informed that Castellano was the
subject of numerous complaints, including instances of stalking and harassment of
his female classmates.  At the conclusion of the interview, Jane was informed that
the VU Police Department would investigate the report.

87. Vincennes University does not have a sexual assault resource team and relies on
Hope's Voice, a volunteer organization that can provide assistance to victims of
sexual assault, and the assistance of community members.

88. On the evening of September 5, 2013, Mr. and Mrs. Doe arrived at VU to pick up
Jane.  Jane remained at home for the weekend and returned to campus on
September 8, 2013.

89. With the assistance of Marcie Arango with Hope's Voice, Jane obtained an order
of protection against Castellano on September 9, 2013.  Marcie also accompanied
Jane to meet with the Knox County prosecutor on October 23, 2013. Marcie
instructed Jane to "make sure she is telling the truth."  Jane took this to mean that

16

Marcie did not believe her and felt uncomfortable.  Jane never met with Marcie or anyone else from Hope's Voice after the interview with the Knox County prosecutor.  No one from Hope's Voice ever contacted Jane again, and Marcie never returned phone calls from Mrs. Doe.

90. Jane has a recognized learning disability and participated in VU's Students Transition into Educational Program (STEP).  STEP's purpose is to provide comprehensive support for disable students to allow them to be successful in their classes.

91. Upon returning to campus, Jane explained the sexual assault to the STEP coordinator and requested additional assistance with her schoolwork.  The coordinator denied Jane's request for support and threatened to fail her in one of her classes.  Jane struggled to catch up, but her grades suffered as a result of VU's lack of academic assistance.

92. Mrs. Doe contacted the President of VU and was referred to the Dean of Students, John Livers.  Mr. and Mrs. Doe met with Livers on September 12, 2013, while Jane was in class.  During this meeting Livers was dismissive of Jane's experience.  He stated that Castellano had a "tough childhood" and indicated that he had a relationship with Castellano.  Livers provided no answers when Mrs. Doe directly asked him about incident reports accusing Castellano of stalking and harassment.

93. At the conclusion of the meeting Livers stated he would look into Jane's complaint and get back to them.  He offered no help in the meantime, but stated

that Castellano would be suspended from school.  Over the next eight weeks,

Livers did not contact or respond to messages from the Doe family.

94. As a result of Castellano's suspension he was not allowed on campus property.

Jane was warned that he could still be on the public property that surrounded VU.

Castellano's friends, however, remained on campus and free to harass Jane,

including one such incident where Castellano's friend jumped out of a bush,

traumatizing Jane even further.

95. Jane feared travelling on campus alone, and requested an escort to her classes.

This request was denied, despite the violent sexual assaults she suffered.  The

university informed Jane that she could not get an escort simply because she

asked--she must demonstrate that she is in imminent physical danger.

96. The only on-campus resource for VU sexual assault victims was through the VU

Counseling Office.  When Jane reached out in October 2013, the earliest

appointment offered was November 8, 2013.

97. Mrs. Doe's attempts to reach out to Dean Livers were rebuffed and so she drove

to VU and visited Livers's office in person.  Initially Mrs. Doe was told Livers

could not see her; she responded by sitting and waiting.  Livers finally agreed to

meet and stated that Castellano was going to be expelled.  He provided no further

details.

98. Mrs. Doe informed Dean Livers that Jane was considering withdrawing from

school out of fear.  He quickly responded by offering to immediately withdraw

Jane from VU.  When Mrs. Doe stated that this was only one consideration and

that Jane would prefer to get more assistance and remain at VU, Livers' demeanor became much more serious.  Livers did not offer any support for Jane.

99. Jane confided in her psychology professor in October 2013. He referred Jane to the VU Counseling Center and helped her finally get an appointment with Jennifer Andrews.  After meeting one time per week, Jane felt Jennifer was judgmental and did not feel comfortable during the sessions.  Jane requested a different counselor and that request was denied.

100. Jane ended the semester with a 2.00 GPA, a significant departure from her high school GPA of 3.3. When she returned for the spring 2014 semester, the problems from the fall persisted, leading to Jane's abrupt withdrawal in March 2014.

101. In March 2015, Jane continued to emotionally struggle with the trauma of her attack.  Jane has continued to suffer from major depression and PTSD. On February 24, 2015, Jane attempted to injure herself and was hospitalized for three days. She continues to suffer deep psychological scars from Castillano and the hostile education environment at VU.

## COUNT I
### Violation of Title IX- 20 U.S.C. § 1681(a)
### (Clearly Unreasonable Response-VU)

102. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

103. Defendant VU had actual knowledge Castellano's sexual harassment and violent behavior towards female classmates.  On at least six occasions students filed reports citing such inappropriate behavior as:

a.  Actively stalking female classmates by waiting outside their classes or following them at night;

b.  Repeatedly calling and texting female classmates vulgar messages;

c.  Threateningly flashing a knife to a classmate;

d.  Fondling himself in a female student's dorm room against her will.

104. VU's responses to the complaints filed against Castellano were clearly unreasonable in light of the known circumstances.  Each report ended with the officer speaking to Castellano and taking no further disciplinary action despite the frequency and increasing severity of his actions.

105. As a result of VU's deliberate indifference to Castellano's misconduct he remained on campus in the fall of 2013, leaving students vulnerable to his continued harassment.

106. Plaintiff was subjected to severe, pervasive and objectively offensive conduct at the hands of Castellano.  Such instances included being:

a.  Held captive in his apartment;

b.  Forcibly raped;

c.  Threatened and cut with Castellano's knife;

d.  Battered with both a hand and open fist.

107. Plaintiff has been deprived access to educational opportunites as a result of her harassment, including but not limited to: emotional distress, fear and anxiety, being forced to drop out, as well as damage and delays in her educational progress.

108. At all relevant times VU had disciplinary control of Castellano.  Furthermore, each of the events alleged within the complaint occurred on VU's campus, under the jurisdiction of the VU police department, an entity of the university.

    WHEREFORE, Plaintiff respectfully demands judgment against Defendant Vincennes University Board of Trustees awarding:

    a.   Damages in amounts to be established at trial, including, without limitation, reimbursement and repayment for all Plaintiff's tuition and related expenses; payment of Plaintiff's expenses incurred as a consequence of sexual assault; damages for deprivation of equal access to education benefits and opportunities provided by VU; and damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and  loss of past, present, and future enjoyment of life;

    b.   Injunctive relief to be determined at trial requiring VU to comply with federal law under title IX;

    c.   Pre-and post-judgment interest;

    d.   Costs;

    e.   Attorneys fees pursuant to 42 U.S.C. § 1988(b); and

    f.   Such other and further relief as the Court may deem just and proper.


### COUNT II
### Violation of Title IX - 20 U.S.C. § 1681(a)
### (Hostile Educational Environment)

109. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

110. Plaintiff was subject to physical sexual harassment, sexual assaults, and sexual discrimination that was so severe, pervasive, and objectively offensive that she was denied access to educational opportunities and benefits.

111. For the Plaintiff, VU became a sexually hostile environment because she:

   a.  Felt that VU Police, Hope's Voice volunteers, the Knox County prosecutor, and the VU Dean of Students did not believe her account;

   b.  Lived in fear as a result of harassment from Castellano's friends;

   c.  Requested and was denied escorts around campus to ensure her safety;

   d.  Requested and was denied additional academic support through the STEP program;

   e.  Requested and was denied a new counselor through the VU Counseling Center;

   f.  Was encouraged to withdraw from VU, instead of being offered additional support.

112. VU was deliberately indifferent to Plaintiff's known sexual harassment and the sexually hostile environment in which she suffered, as a result of its failure to:

   a.  Institute any accommodations for the Plaintiff's safety;

   b.  Periodically update Plaintiff on the status of Castellano's expulsion hearing;

   c.  Provide academic and counseling support to ensure Plaintiff had access to educational opportunities.

113. As a result of Defendant's deliberate indifference, Plaintiff was forced to leave campus and lost her educational opportunities at VU.

114. Because of the ongoing sexually hostile environment that VU deliberately failed to address, Plaintiff suffered losses of educational opportunities and benefits, along with suffering emotional distress, fear and anxiety, and damage and delays in her educational progress.

115. As a direct and proximate cause of Defendants' unlawful actions including violations of Title IX, Plaintiff is entitled her to actual and compensatory damages in an amount to be determined by a jury.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Vincennes University Board of Trustees awarding:

a. Damages in amounts to be established at trial, including, without limitation, reimbursement and repayment for all Plaintiff's tuition and related expenses; payment of Plaintiff's expenses incurred as a consequence of sexual assault; damages for deprivation of equal access to education benefits and opportunities provided by VU; and damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life;

b. Injunctive relief to be determined at trial requiring VU to comply with federal law under title IX;

c. Pre-and post-judgment interest;

d. Costs;

e. Attorneys fees pursuant to 42 U.S.C. § 1988(b); and

f. Such other and further relief as the Court may deem just and proper.

## COUNT III-State Law
### Battery-Castellano

116. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

117. From August 23 through September 5, 2013 Castellano intended to touch Plaintiff, including but not limited to the following situations:

    a.  Repeatedly raping her;

    b.  Striking her with both an open hand and a closed fist;

    c.  Hitting her head against the wall;

    d.  Dragging her by her wrist to his desired location.

118. Plaintiff found the physical interactions between herself and Castellano harmful and offensive.

119. As a result of Castellano's repeated harmful touching, Plaintiff suffered physical bruising, in addition to emotional injuries.

    WHEREFORE, Plaintiff respectfully demands judgment against Defendant Valdemar Castellano awarding:

    a.  Damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of sexual assault; damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life;

    b.  Such other and further relief as the Court may deem just and proper.

## COUNT IV-State Law

**Assault-Castellano**

120. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

121. From August 23 through September 5, 2013 Castellano intended to cause imminent harm to the Plaintiff, including but not limited to:

    a.   Threats of injury to her;

    b.   Brandishing his knife.

122. As a result of these actions the Plaintiff was placed in fear of her life and caused her continuing anxiety.

        WHEREFORE, Plaintiff respectfully demands judgment against Defendant Valdemar Castellano awarding:

    a.   Damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of fear and anxiety; damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life;

    b.   Such other and further relief as the Court may deem just and proper.


**COUNT V-State Law**
**False Imprisonment-Castellano**

123. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

124. Castellano intended to confine Plaintiff in his apartment by:

    a.   Locking his bedroom door;

    b.  Forcing her to sleep between himself and the wall;

    c.  Threatening her and keeping his knife on the bedside table.

125. During this time, Plaintiff remained confined in Castellano's bedroom.

126. Plaintiff knew she was being imprisoned.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Valdemar Castellano awarding:

    a.  Damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of fear and anxiety caused by the confinement; damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life;

    b.  Such other and further relief as the Court may deem just and proper.

### COUNT VI-State Law
### Intentional Infliction of Emotional Distress-Castellano

127. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

128. From August 23 through September 5, 2013 Castellano exhibited extreme and outrageous conduct, including by not limited to:

    a.  Repeatedly raping the Plaintiff;

    b.  Holding her captive in his apartment;

    c.  Threatening her with his knife;

    d.  Striking her with a closed fit and open palm.

129. The frequency and duration of Castellano's behaviors demonstrate he acted with reckless disregard as to whether the Plaintiff would suffer additional emotional harm.

130. As a result of Castellano's repeated reckless behavior, Plaintiff suffered severe emotional injuries resulting in her hospitalization.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant Valdemar Castellano awarding:

a.  Damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of repeated sexual and physical assault; damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life;

b.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/Ronald S. Langacker
Ronald S. Langacker, #20618-23
Attorney for Plaintiff
LANGACKER LAW, LTD.
102 E. Main Street, Suite 100
Urbana, IL 61801
Telephone: 217.954.1025
Fax: 217.903.5255
E-mail: langackerlaw@gmail.com